UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUBREY KILCHRIST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-2567-B |
| | § | |
| SIKA CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER[1]

Before the Court is Defendant Sika Corporation's ("Sika") renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 ("Rule 50(b)").[2] Sika seeks judgment on its behalf after a jury returned a verdict in favor of Plaintiff Aubrey Kilchrist ("Kilchrist") in this personal injury suit. Sika maintains that it bears no legal responsibility for the injuries suffered by Kilchrist when he slipped and fell on wet concrete at Sika's plant in Mesquite, Texas. More to the point, Sika argues that, under the facts of this case, it had no legal duty to warn Kilchrist of the condition of the ground and thus cannot, as a matter of law, be held liable for Kilchrist's injuries. After hearing the evidence presented at a jury trial on the issue of liability, the Court agrees and **GRANTS** the motion. As such, Kilchrist's claims are **DISMISSED**.

---

[1] This written opinion incorporates the findings made orally by the Court on July 14, 2012.

[2] Sika filed a motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a) ("Rule 50(a)") at the close of Plaintiff's case. (doc. 78). The same motion was presented orally as a renewed motion post-verdict, pursuant to Rule 50(b).

I.

BACKGROUND

*A. Pretrial Proceedings*

As described in the previous filings,[3] this action arises out of a slip and fall accident that occurred at Sika's plant in Mesquite, Texas. Plaintiff Kilchrist was employed as a truck driver for Distribution Technology, Inc. ("DistTech"), an independent contractor that provided trucking services for Sika. Beginning in June 2009, DistTech assigned Kilchrist to work out of Sika's plant in Mesquite, Texas. Sika's plant includes a large bay for loading and unloading trucks. The loading and unloading area is surrounded by a dike to prevent water and other materials from washing into the street. Generally, Sika employees unload the raw materials from the trucks and keep the area adjacent to the trucks clean.

On September 15, 2009, Kilchrist arrived at the Sika plant and parked his truck on the street because no bay was available. Later in the afternoon, Kilchrist asked another DistTech employee to move his truck into a bay when a spot became available. While Kilchrist was at lunch, the other DistTech driver moved Kilchrist's truck into the bay for loading. Upon returning from lunch, Kilchrist entered the Sika plant through the front office and stepped over the dike into the loading bay area. While approaching his truck, Kilchrist maintains he encountered a puddle of clear liquid he assumed was water, but in actuality contained admixture ("admix"), a slippery substance that is added to concrete during mixing. Kilchrist maintains that, due to the presence of admix in the

---

[3] These facts are gleaned from the Court's Memorandum Opinion and Order filed April 17, 2012, which in turn drew its facts from Plaintiff's Original Petition as well as the parties' submissions in connection with Sika's Motion for Summary Judgment.

puddle, he slipped and fell. Pl.'s Resp. to Def.'s Mot. Summ. J. 1-3. Kilchrist later filed suit against Sika as a result of the injuries suffered in his fall, which eventually required extensive medical treatment.

In its Motion for Summary Judgment filed October 7, 2011, Sika argued that, given the open and obvious condition of the wet surface and Kilchrist's status as an employee of an independent contractor, Sika bore no legal duty to warn Kilchrist of the hazard. Def.'s Br. Supp. Mot. Summ. J. 1, 4-7. In response, Kilchrist challenged Sika's position that the defect was open and obvious, claiming instead that the mixture looked like water but included admix, a substance that he maintained was far more slippery than water. Pl.'s Resp. Def.'s Mot. Summ. J. 1-3. Kilchrist argued that he "had no way of knowing that what appeared to be ordinary water was actually something much more hazardous." *Id.* at 1. Because it was concealed, Kilchrist argued, Sika had a duty to warn him about the potential hazard. *Id.* at 5-8.

The Court denied Sika's Motion for Summary Judgment, finding a genuine issue of fact as to whether the wet surface was an open and obvious defect, as maintained by Sika, or was concealed, as urged by Kilchrist, reasoning:

> Sika argues that Kilchrist's suit must fail because he slipped on a puddle, which was an open and obvious defect that he claimed to see before walking through the loading area. In Sika's view, then, it owed no duty both because the puddle was not concealed and also because it was in an area that Kilchrist would have known was frequently covered with water. However, Kilchrist alleges that the puddle included not only water, but admix, a substance that is far more slippery than water. In [*General Electric Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008)] the case on which Sika heavily relies, the Texas Supreme Court found that the defendants had no duty to warn the plaintiff when using a ramp because the fact that it had handrails was open and obvious. But the facts before the Court, as alleged by Kilchrist, suggest that while he may have expected the floor to be covered with water, he would not have anticipated that the puddle would include admix. The difference, then, is that while Moritz was familiar with the ramp and would have

> known that it did not include a handrail, Kilchrist would have predicted that the puddle was merely water, and the fact that it may have included another substance would have defied rather than affirm his expectation.
>
> Accordingly, given the facts alleged by Kilchrist and the evidence it has offered in its Response, the Court cannot say that there are no genuine issues of fact as to whether Sika owed a duty to Kilchrist. Because the Court must make all inferences in favor of the non-moving party, the Court finds that reasonable jurors could conclude that the puddle included admix, that the admix was concealed, and that the mixture caused Kilchrist's fall and injures.

See Mem. Op. Apr. 17, 2012 at 6-7 (footnotes omitted).

The Court's finding on summary judgment, that there was a fact question as to whether the presence of admix in the puddle was a known and obvious versus a concealed hazard, was a close one. As Sika pointed out in its summary judgment motion, Kilchrist testified during his deposition that, before his accident, he had seen the area where he fell covered "with water and *admix* and other chemicals inside the dike." Def.'s Br. Supp. Mot. Summ. J. 2 (emphasis added). This testimony would tend to negate Kilchrist's theory that Sika failed to warn him about a concealed hazard. Nonetheless, Kilchrist salvaged the case from summary judgment when he modified the foregoing testimony by stating "I don't ever remember seeing additive out there." Pl.'s Resp. Def.'s Mot Summ. J. 3-4. Had Kilchrist not modified his answer, the Court would have found that the undisputed record established that Kilchrist was aware that the wet floor could contain admix at the time he fell and, consequently, the hazard was not concealed from him. That being the case, Sika would have owed him no duty and could not be held liable for his injuries. Instead, drawing all reasonable inferences in Kilchrist's favor, the Court found that Kilchrist's claims survived summary judgment given that

there was a fact issue as to whether he would have anticipated that the puddle on the floor would include admix, based on Kilchrist's thin "I don't ever remember seeing additive out there" qualifier.[4]

B.  *Jury Trial – Evidence and Legal Issues*

    1.  <u>Pretrial Order– Issues for Trial</u>

After the Court denied Sika's motion, the case proceeded to trial. Just prior to trial, as required under Federal Rule of Civil Procedure 16(e) and this Court's scheduling order, the parties submitted their proposed "Joint Pretrial Order" ("JPO") (doc. 75). The JPO identified the issues for trial and was signed and approved by the parties and entered by the Court on August 13, 2012. The JPO contained, *inter alia*, summaries of the parties' respective contentions in the case as well as a list of what the parties submitted to the Court as the "contested issues of fact" for trial. JPO at 1-4. The parties' contested issues of fact included:

> 1. Whether Defendant Sika Corporation caused the subject condition on the premises or knew, or in the exercise of ordinary care should have known, of the existence of that condition before Plaintiff Aubrey Kilchrist slipped . . . .
> 3. Whether Plaintiff Aubrey Kilchrist slipped on *admixture*.
> 4. The comparative fault among Plaintiff Aubrey Kilchrist, Defendant Sika Corporation and Responsible Third Party Distribution Technology, Inc.

*Id*. at 3 (emphasis added).[5]

---

[4] The Court also found that there was a fact issue as to whether the puddle Kilchrist slipped on contained admix, given that Sika "ha[d] not foreclosed the possibility that a mixture of substances, which may include admix, could appear colorless." Mem. Op. 5 n.2 However, at trial, the evidence presented showed that there were various colors of admix produced at the Sika plant (brown, green, amber, blue, orange, and red), with no evidence showing that admix or a mixture of admix and other liquids could be clear.

[5] The remaining "issues of fact," identified in numbers 2 and 5-8 in the JPO, related to the issue of damages. JPO at 4.

Among the "contested issues of law" identified for trial by the parties in the JPO was whether Defendant Sika owed a "legal duty" to Plaintiff Kilchrist. *Id.* at 4.

### 2. Trial – Evidence at Trial

At the pretrial conference, the Court bifurcated the issues of liability and damages for trial. The liability phase, which lasted less than one day, consisted of testimony by Kilchrist, Larry Houser, a dispatcher for DistTech, and Sika's plan manager, Craig Casey. Both Houser and Casey were present on the day of Kilchrist's accident. Kilchrist, however, was the only eyewitness to his accident.

On direct examination, Kilchrist testified that the entire floor at Sika's plant was usually wet as "[t]hey are always washing the floor." Tr. 164.[6] He stated that he had rubber soles added to his boots "[b]ecause of going to plants" and "[t]o keep from slipping" when going into the Sika plant. *Id.* at 166. With regard to his injury, he testified that he knew he had slipped on admix and not just water because "[w]ater is not that slick." *Id.* On cross-examination, he stated that he worked for DistTech and was assigned to the Sika plant from June 2009 through the end of August 2009. *Id.* at 170-71. He described his work as driving trucks for DistTech out of Sika's plant three to five times a week. *Id.* at 171. Kilchrist further stated that he knew at the time of his accident that the area on the floor where he slipped "was always wet." *Id.* at 173.

Kilchrist agreed with Sika's counsel that he "knew [the floor] was always wet with water, admix and potentially other chemicals" *Id*. Kilchrist further agreed with Sika's counsel that, at the time of his accident, he had known that the floor could be wet with water, admix and other chemicals and had known this since June of 2009. *Id.* When Sika's counsel stated to Kilchrist that

---

[6] As of the date of this opinion, no official transcript has been filed. The Court accordingly cites to an unofficial copy of the transcript kept on file in chambers.

"[a]s of the day of the accident, September 15, 2009, [he] had about two-and-a-half to three months' knowledge of the fact that this area was always wet with water, admix, and other chemicals," Kilchrist responded "[m]ostly just water." *Id.* When Sika's counsel immediately followed up with "[b]ut you knew admix could be in there; correct?" Kilchrist responded, "[y]eah." *Id.* And Kilchrist agreed that he knew the area inside the dike system where he fell could "be wet with admix." *Id.* at 174. Kilchrist later agreed with Sika's counsel that he saw that "the whole area" inside the dike system was wet when he stepped into it before he slipped. *Id* at 176-77. He also later agreed that the wet condition of the floor was "open" and "obvious" to him and not "concealed" from him by Sika. *Id.* at 177. Kilchrist later agreed that – whether the area had just water or admix or anything else – he knew the are where he fell "was going to be slicker than the dry pavement." *Id.* at 186.

Plaintiff's counsel did not present any evidence – via testimony from Kilchrist or otherwise – that conflicted with the above-described testimony by Kilchrist that, weeks before he fell, he knew that the area where he slipped could have been wet with admix among other substances.

After Plaintiff rested his case, Sika moved the Court for judgment as a matter of law, pursuant to Rule 50(a), arguing that Kilchrist had failed to establish that the wet floor hazard was concealed from him and, as such, Sika, as a matter of law owed Kilchrist no duty. The Court reserved ruling on the motion. Sika re-urged its Rule 50(a) motion at the close of Sika's case and the Court again reserved its ruling pending a verdict by the jury on the question of liability.

After closing arguments[7] on the liability phase of the case, the Court read its instructions to the jury. The jury was not instructed on nor were they asked to determine whether or not Sika owed Kilchrist a legal duty to warn of the slippery floor, given that this is an issue of law for the court to determine. The jury retired to deliberate and after a few hours returned a verdict in favor of Kilchrist. Specifically, the jury found that the actions of Sika and DistTech were the proximate cause of Kilchrist's injuries for which the companies were to be held 60% and 40%, respectively, responsible.

Upon receiving the verdict, Sika renewed its motion for judgment as a matter of law, this time under Rule 50(b). Sika's post-verdict Rule 50(b) motion, now before the Court, is based on the same grounds as its pre-verdict motion under Rule 50(a). Specifically, Sika urges the Court to enter judgment in its favor, despite the jury verdict, because Kilchrist failed to establish, as a matter of law, that the wet floor was a concealed defect. Consequently, Sika maintains it owed Kilchrist no duty to warn him of this condition. The Court agrees and begins its analysis of Sika's motion by reviewing the relevant legal standards.

---

[7]As an aside, at closing, Plaintiff's counsel, to the surprise of the Court and Sika's counsel, argued for the first time that Plaintiff did not have to prove that it was admix on the floor that caused him to fall. The Court disagrees with this for several reasons and noted its disagreement on the record. First, claiming something besides admix caused his slip and fall constituted a material change from the factual theory Kilchrist had maintained since the day of the accident when he told the DistTech supervisor that he had slipped on admix. Kilchrist has consistently maintained this theory of liability from the pretrial phase through the evidentiary portion of the jury trial. Tr. 166; Pl.'s Resp. Def.'s Mot. Summ. J. at 1-3. Moreover, Kilchrist is bound by his assertions in the JPO as to what factual issues were to be tried by the jury. In their JPO, the parties identified "[w]hether Plaintiff Aubrey Kilchrist slipped on admixture" as one of the issues of fact for the trial. JPO at 3. Nowhere in the JPO was it indicated that there was a fact issue as to whether any other substance was the cause of Kilchrist's fall and resulting injuries. Kilchrist's attempt to shift factual theories during closing arguments is simply not permitted under the Federal Rules or this Court's scheduling order. *See* FED. R. CIV. P. 16(d). The final pretrial order supercedes all prior pleadings and binds the parties at trial to the issues raised in the pretrial order. *See, e.g., Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007); *Ismail v. Cohen*, 706 F. Supp. 243, 249 (S.D.N.Y. 1989).

## II.

## LEGAL STANDARDS

*A.     Rule 50(b)*

"The standard for granting a [post-verdict] renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under Rule 50(a)." 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (3d ed. 2008) (footnotes omitted). Accordingly, the motion should be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cano v. Bexar Co.*, 280 Fed. Appx. 404, 406 (5th Cir. 2008) (internal citations omitted). The Court "'should consider all of the evidence – not just that evidence which supports the non-mover's case – but in the light and with all reasonable inferences most favorable to the party opposed to the motion.'" *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (quoting *Mosley v. Excel Corp.*, 109 F.3d 1006, 1008-09 (5th Cir. 1997) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). The court must not make credibility decisions or weigh the evidence in making its determination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). "'[T]o survive a Rule 50 motion, 'the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim.'" *Goodner*, 650 F.3d at 1039 (quoting *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002)). Ultimately, a court should not grant a Rule 50 motion unless the facts and inferences therefrom "point so strongly and overwhelmingly in favor" of the moving party "that reasonable jurors could not have arrived at the verdict reached." *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995) (internal citation omitted).

"Although federal standards of review apply, a court sitting in diversity, as here, 'refers to state law for the kind of evidence that must be produced to support a verdict.'" *Goodner*, 650 F.3d at 1040 (quoting *Wackman v. Rubsamen*, 602 F.3d 391, 400 (5th 2010)). The state law that applies to this analysis is set forth below.

B.     *Texas Negligence Actions – Premises Liability*

To maintain any negligence action under Texas law, a plaintiff must establish that the defendant owes him a legal duty. *Moritz*, 257 S.W.3d at 217. Under Texas law, a landowner has limited duties to employees of an independent contractor and is generally liable only for claims from a pre-existing defect, and only where that defect was concealed. *Id.* at 218. As a result, a landowner must take reasonable precautions to protect employees from hidden or concealed dangers, and may discharge this duty by adequately warning the independent contractor of said dangers. *Id.*; *Delhi-Taylor Oil Corp. v. Henry*, 416 S.W.2d 390, 392 (Tex. 1967) ("The law is now well established in this State that an owner or occupier of land may relieve himself of liability for harm to his invitees from dangerous conditions on the premises which are not open and obvious by taking proper precautions to protect them from the dangers or by warning them thereof."). On the other hand, full knowledge by an independent contractor of a potential hazard "should and will be held to discharge the landowner's alternative duty to warn the employees" of an independent contractor. *Moritz*, 257 S.W.3d at 218.

Whether a landowner in a premises liability negligence action owes an independent contractor a legal duty is a question of law for the court to determine. *Id.* at 217 (internal citations omitted). This, in turn, requires "a legal analysis [by the court] balancing a number of factors,

including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant."[8] *Id.* at 218. The Court's analysis is next.

## III.

## ANALYSIS

Reviewing the entirety of the evidence admitted at the half-day jury trial and considering it in the light most favorable to Kilchrist, the Court finds that the evidentiary basis for the jury's verdict is legally insufficient to sustain it. This determination rests upon the Court's finding that – under the evidence presented – Sika did not owe Kilchrist a legal duty to warn him of the floor hazard. The Court so finds because the evidence presented by Kilchrist established that the hazard was not concealed from him. Kilchrist himself stated that he was aware both that the plant floor could be wet and slippery and of the potential that the wet floor could contain admix.

"[A]n employer owes no duty to warn of hazards commonly known or already appreciated by the employee." *Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793, 795 (Tex. 2008). Here, Kilchrist's own uncontradicted testimony that he had been aware for several weeks leading up to his accident that the plant floor where he slipped "was always wet with water, admix and potentially other chemicals," Tr. 173, negates any duty by Sika to warn him of a concealed hazard. Even during his testimony when Kilchrist attempted to downplay the predictability of admix being on the floor by

---

[8]The Court is concerned about certain questioning by Plaintiff's counsel during trial and also the closing argument of Plaintiff's counsel regarding the duties of owners or occupiers of premises. Counsel's questioning and statements, although not objected to by Sika, faulted Sika for inferring that its duty to Kilchrist was different or lesser than the duty that businesses open to the public, such as shopping malls, might have to the public. Such questioning and statements together constitute an improper and incorrect statement of the law, essentially arguing that the duty owed by occupiers or owners of premises to an employee of an independent contractor is the same duty owed to the public by businesses open to the general public.

saying the floor was "mostly" wet with water, he also conceded that he knew that "admix could be in there." *Id.* He agreed that the day of the accident that the wet floor was "right out there in the open" and "obvious." *Id.* at 177. In fact, he had his cowboy boots fitted with rubber soles "to keep from slipping" at plants like Sika's. *Id.* at 166.

Based upon Kilchrist's uncontroverted testimony that he knew the floor could contain admix weeks before he slipped, the Court finds that the alleged hazard was not concealed. Consequently, the court finds that Sika had no legal duty to warn Kilchrist of the possible presence of admix on the floor. Given that Sika has no legal duty to warn Kilchrist, Sika is therefore entitled to judgment as a matter of law on Kilchrist's claims pursuant to Rule 50(b).

V.

CONCLUSION

For the foregoing reasons, Sika's (doc. 78) renewed motion for judgment as a matter of law filed pursuant to Rule 50(b) is hereby **GRANTED**, and Kilchrist's claims are **DISMISSED**.

**SO ORDERED.**

**SIGNED: August 22, 2012.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE